UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

WILLIAM R. MILLER,

                 Plaintiff,

   -against-

GAIL A. NORTION, Secretary of the
UNITED STATES DEPARTMENT
OF INTERIOR,

                Defendant.
----------------------------------------------------------------X

NOT FOR PUBLICATION

**MEMORANDUM & ORDER**

04-CV-3223 (CBA)

AMON, United States District Judge:

      Plaintiff William Miller ("Miller") brought this action against his employer, the United States Department of Interior ("DOI"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") as amended, 42 U.S.C. § 2000e *et seq.*, Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq.*, and the Age Discrimination in Employment Act of 1967, ("ADEA") as amended, 29 U.S.C. § 621 *et seq.* DOI has moved for summary judgment. For the reasons set forth below, DOI's motion is granted.

I.    **Background**

      Miller is a 78 year-old African American man who lost his hearing while serving in the United States Army. (See Second Am. Compl. ("SAC") at ¶ 14-15; Aff. of Pl. at ¶ 4.) His claims of employment discrimination are based on his age, race, and disabled status. (SAC, First, Third, and Fifth Claims for Relief.) In addition, Miller adds a claim for retaliation based

1

on actions that he alleges were taken in response to his attempts to exercise his Title VII rights.[1] (SAC, Seventh Claim for Relief.)[2]

Miller retired from the Army in 1972 due to a pulmonary condition. (Aff. of Pl. at ¶ 5.) From 1972 through 1982, Miller worked as a civilian in the Department of Defense, retiring as Grade 5, Step 5. (Miller Dep. 29-30, 33.) In May of 1994, Miller resumed working for the federal government, working for the DOI as a summer seasonal laborer at Gateway National Recreation Area ("Gateway NRA"). He was hired at Grade 1, Step 1. (Miller Dep. 63, 65.) Miller continued taking seasonal positions with the DOI until 1999, when he was hired as a permanent employee. Miller continued working for DOI until he retired on February 3, 2006. (Miller Dep. 69.) Records indicate that at least at certain times during his employment at Gateway NRA, he was the oldest person working there. (Def. Ex. B at Ex. 5.)

When he was converted from a seasonal worker to a permanent position, his salary was adjusted to recover the value of the Civil Service Retirement System pension that Miller received. However, due to an administrative error, the amount of the deduction was improperly calculated.[3] After noticing the improper deduction, Miller repeatedly complained to Dorothy Roebuck, the Personnel Director of Gateway NRA, in February and March of 2000. According

---

[1] As will be discussed in more detail in the "merits" section below, at oral argument, Miller's attorney suggested that he was no longer pursuing his Title VII claims, both for discrimination and retaliation, but the Court will address them in an abundance of caution.

[2] In a letter dated July 29, 2005, Miller withdrew his Second, Fourth, Sixth, and Eighth Claims for relief, which had been based on New York State Human Rights Law, and altered his First Claim for Relief such that it was brought under the Rehabilitation Act, rather than the Americans with Disabilities Act. These changes were deemed incorporated into the SAC by order dated August 8, 2005.

[3] There are some inconsistences in Miller's brief regarding the amount of the improper deduction, but the correct amount is legally immaterial.

to Miller, Roebuck ignored his requests and told him, "if you don't like it, you can quit." (Miller Aff. ¶ 23.) Miller says that he contacted an Equal Employment Opportunity Counselor, Ann Bolling, in March of 2000, who refused to accept Miller's complaint or to provide him with pre-complaint counseling. (Miller Aff. ¶ 15, 16.)

On March 30, 2000, Miller wrote a letter to Melodee Stith, the Director of EEOC for the DOI, complaining that 1) Roebuck allowed the improper deductions from Miller's paycheck to recover his annuity, 2) that he was discriminated against when he was appointed at the Wage Grade 3502-2 on December 4, 1999, the day when he was made a permanent employee,[4] 3) that his right to an anonymous filing was violated when Bolling refused to help him file his complaint and instead told Roebuck of the proposed complaint, and 4) that he should have been converted from a seasonal to a permanent employee sooner. (Pl. Ex. F.) In addition, he mentions in that letter that he was entitled to preference in hiring as a war veteran with a disability. (Id.) Miller's complaint was assigned the number FNP-2000-028.

At around the same time, Miller filed a complaint with the Merit Systems Protection Board ("MSPB"). (Def. Ex. B. at 2255-56, 2259-63.) Miller's EEO complaint was initially dismissed on the grounds that he had filed an MSPB claim but after his MSPB claim was terminated, his EEO claim was processed. (Id.)

On October 29, 2002, EEO Investigator Eddie Neal examined Miller with respect to FNP-2000-028. (Pl. Ex. K.) In that examination, Neal stated that Miller's claim was understood to be on the basis of age, race, and disability. (Pl. Ex. K. at 2.) During the examination, Henry

---

[4] The text of his letter is unclear. Though he says he is complaining about his pay grade, his math suggests that he is concerned about the improper deduction, not his allegedly improperly low wage.

DeJesus, who appeared at the hearing on Miller's behalf, explained that Miller was subject to an improper deduction to recover his annuity starting on December 29, 1999[5] and continuing through March 22, 2000. DeJesus explained that the mistake in the deduction to recover the annuity had been resolved[6] but that Miller had not been compensated for the fact that he was not hired at the proper wage grade and that he should have been made a permanent employee sooner than he was. (Id. at 10.) DeJesus argued to Neal that Miller should have been made a permanent employee when he was first employed by the DOI in 1994 and that he should have been classified as Wage Class 5 rather than Wage Class 2 at that time. (Id. at 17, 21.) DeJesus also explained that after the EEO complaint was filed, Miller was promoted to work leader but was not given the pay raise commensurate with the promotion. (Id. at 11.) DeJesus claimed that a separate complaint was filed concerning that issue, but according to the DOI, Miller never filed any other EEO complaints in connection with his employment at the DOI other than FNP-2000-028. (Def. Ex. J at 188-89.)[7]

DeJesus also complained that Miller was passed over for a foreman position in favor of an allegedly less qualified candidate. (Id. at 12-13.) Miller believed that he was passed over because he made a complaint to the Secretary of the DOI about the fact that a group of DOI

---

[5] The record is unclear because December 9, 2000 is also mentioned (though hardly possible since the error was corrected in March of 2000), but I take the earlier date as a precaution for Miller.

[6] In addition to correcting the amount of future deductions, the record indicates that Miller received a refund for the amounts erroneously deducted from his paychecks. (Def. Ex. B at 2222.)

[7] Miller does alleges that he filed a complaint with the EEOC on March 31, 2002. However, neither this alleged complaint nor any other mention of it appears anywhere in the record. Presumably, rather than an allegation about a second complaint, this is a typo regarding the actual March 30, 2000 complaint.

4

employees did not perform their jobs and were essentially stealing from the United States government. (Id. at 14.) In his complaint, Miller complains about additional instances in which he believes he was passed over for promotions that he was entitled to.[8] (Compl. ¶ 27.) Finally, in his memorandum of law in opposition to the DOI's motion for summary judgment ("Pl's Br."), Miller argues that Gateway NRA agreed to reclassify all personnel required to operate motor vehicles, which should have included Miller, to Wage Grade 5, but that Roebuck refused to reclassify Miller accordingly. (Pl's. Br. at 9-10.)

Ultimately, at the conclusion of the EEO case, a decision was issued finding that no discrimination had taken place. (Def. Ex. C at 6-7.) Thereafter, Miller initiated this action.

II.     **Summary Judgment Standard**

A court will not grant a motion for summary judgment unless it determines that there is no genuine issue of material fact and the undisputed facts are sufficient to warrant judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250 (1986). The moving party bears the burden of 'informing the court of the basis for its motion," and identifying those portions of the pleadings and other submissions which it believes demonstrate the absence of a genuine issue of material fact. Fed. Deposit Ins. Corp. v. Giammettei, 34 F.3d 51, 54 (2d Cir. 1994) (citing Celotex, 477 U.S. at 323). The party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). In determining whether there is a genuine issue of material fact, the Court must resolve all ambiguities, and draw all inferences,

---

[8] However, in his brief, Miller does not identify any such instance taking place prior to July of 2002, well over two years after the EEO Complaint was filed. (Pl's. Br. at 5-6.)

against the moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir.1987). It is not the court's role to resolve issues of fact; rather, the court may only determine whether there are issues of fact to be tried. Donohue, 834 F.2d at 58. Applying these standards, the Court concludes for the reasons set forth below that DOI's motion should be granted, and Miller's claim should be dismissed in its entirety.

III. **Discussion**

    A. *Timeliness*

Miller brings his claims under Title VII, the Rehabilitation Act and the ADEA.[9] A prerequisite to bringing an action under these sections is complying with the exhaustion requirements of the EEOC. See 29 C.F.R. 1614.103(a) (stating that the EEOC regulations apply to actions brought under those three acts).[10] Pursuant to those regulations "[a]ggrieved persons who believe they have been discriminated against on the basis of race ... age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter" and they must "initiate contact with a Counselor within 45 days of the date of the matter alleged

---

[9] Even to the extent that Miller has abandoned his Title VII claims, the ensuing discussion of timeliness and exhaustion is necessary for the purposes of his age and disability discrimination claims.

[10] In the cases of Title VII and the Rehabilitation Act, the EEO process is mandatory. See Ghosh v. New York City Dept. of Health, 413 F. Supp. 2d 322, 329 (2d Cir. 2006); Bruce v. U.S. Dept. of Justice, 314 F.3d 71, 74 (2d Cir. 2002). With respect to claims arising under the ADEA however, an aggrieved employee may elect to proceed directly to federal district court so long as timely notice is provided to the EEOC. However, if the employee does elect to go through the EEOC administrative process, he is obligated to timely exhaust the administrative remedies of which he has availed himself. See Wrenn v. Secretary, Dept. of Veterans Affairs, 918 F.2d 1073, 1078 (2d Cir. 1990); Economou v. Caldera, 286 F.3d 144, 149 n.8; Briones v. Runyon, 101 F.3d 287, 289 (2d Cir. 1996); Avillian v. Potter, No. 01 CIV 1648, 2002 WL 252479, at *2 (S.D.N.Y. Feb. 21, 2002).

6

to be discriminatory." 29 C.F.R. § 1614.105(a) and (a)(1). Because Miller initiated contact with the EEO office on March 20, 2000 (Def. Ex. B at 2230), only claims based on conduct occurring on or after February 4, 2000 are actionable.[11] Following the parties' briefing in this case, the Supreme Court spoke on the issue of timely filing in discrimination cases in Ledbetter v. Goodyear Tire & Rubber Co., Inc., __ U.S. __, 127 S. Ct. 2162 (2007). In Ledbetter, the Supreme Court held that in discrimination cases:

> [t]he EEOC charging period is triggered when a discrete unlawful practice takes place. A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination. But of course, if an employer engages in a series of acts each of which is intentionally discriminatory, then a fresh violation takes place when each act is committed.

Id. at 2169. The Supreme Court made clear that no different rule exists for cases that involve pay discrimination. Accordingly, Miller's argument that "each paycheck Miller received within the statute of limitations period is actionable, even if it stems from the fact that his pay was improperly set at a time occurring outside of the statute of limitations" (Pl's Br. at 11-12.), was specifically foreclosed by Ledbetter.[12]

In an effort to salvage his untimely claims, Miller notes that the 45-day filing requirement of the EEOC regulations is not jurisdictional, rather it is subject to the doctrines of waiver, estoppel, and equitable tolling. (Pl's. Br. at 17.) However, the burden of demonstrating the appropriateness of equitable tolling lies with the plaintiff, Boos v. Runyon, 201 F.3d 178,

---

[11]In their briefs, both parties acknowledge this time limitation, though they both state the pertinent date to be February 14, 2000. The Court believes this is simply a mathematical error, as 45 days prior to March 20, 2000 was February 4, 2000, since 2000 was a leap year.

[12]At oral argument, Miller's counsel conceded that Ledbetter applies and in this case precludes a "continuing violation" theory based on the continued receipt by Miller of paychecks. (9/12/07 Tr. at 6-7.)

185 (2d Cir. 2000), and Miller has not met that burden here. The basis for equitable tolling advanced by Miller is counselor Bolling's failure to comply with proper EEO procedures <u>when Miller sought counselling</u>. By that time, however, the 45-day filing period had already lapsed. Indeed, had the period not lapsed by then, his claims would have been timely. In all three cases cited by Miller (Pl's Br. at 17), the conduct which excused the 45-day filing requirement caused delay before that period had lapsed. In this case, Miller has not pointed to any conduct by an agent of the DOI (or anyone else, for that matter) of the sort upon which estoppel or equitable tolling would excuse his untimeliness–namely, obstructive conduct occurring within 45 days of the discriminatory conduct complained of and which would have delayed the March 20, 2000 meeting with Bolling. Therefore, Miller is not excused from the 45-day filing requirement on the grounds of estoppel or equitable tolling.[13]

Accordingly, the following discriminatory acts alleged by Miller are outside of the statute of limitations period: that he was not originally hired by the DOI as a permanent employee in 1994, that he was not converted to a permanent employee until 1999, that when he was converted to permanent employee status in 1999, he was improperly made Wage Grade 2 instead of Wage Grade 5, and that the improper amount of his deduction to account for his annuity was discriminatory since the administrative error that caused the subsequent deductions occurred on December 29, 1999.

B.   *Timely Claims*

Miller also alleges a number of discriminatory acts that took place after February 4, 2000.

---

[13]Miller makes no argument that the 45-day filing requirement was waived. Nevertheless, the Court notes that a government agency does not waive a timeliness defense merely by accepting and investigating a complaint containing some allegations that may be untimely. See <u>Belgrave v. Pena</u>, 254 F.3d 384, 387 (2d Cir. 2001).

These can be divided into two categories. First, there are two timely claims that were included in the administrative complaint: the allegation that Roebuck was discriminating against him when she told him that he could quit his job if he did not like the fact that the deduction was being taken out of his paycheck, and the allegation that Bolling violated his right to file an anonymous proceeding by telling Roebuck of his intention to file an EEO complaint. Second, there are numerous allegations based on conduct that took place after the EEO Complaint was filed. These include the allegation that he was not properly elevated to Wage Grade 5 when he was promoted to work leader after filing his EEO complaint, the various allegations that he was passed over for promotions improperly, and the allegation that he was not elevated to Wage Grade 5 when Gateway was instructed to compensate all employees who drove federal vehicles at that wage grade. With respect to the post-EEO complaint claims, many are unexhausted. With respect to any exhausted post-EEO complaint claims, as well as the two timely claims included in the EEO complaint, they fail on the merits.

1. *Exhaustion*

DOI argues that Miller has failed to exhaust the post-EEO complaint claims because they do not appear in the complaint labeled FNP-2000-028 or in any other EEO complaint. Where an EEO charge precedes a federal suit, "[a] district court only has jurisdiction to hear ... claims that either are included in [the] EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." Butts v. City of New York Dept. of Hous. Pres. and Dev., 990 F.2d 1397, 1401 (2d Cir. 1993), *superceded by statute on other grounds as recognized in* Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 693 (2d Cir. 1998). The claims based on subsequent conduct can only "reasonably relate" to EEOC claims

9

which are timely filed. See id. at 1402-03. The Second Circuit has recognized three categories of conduct that are said to be "reasonably related" to timely allegations raised in an EEO complaint: (1) where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charged conduct, (2) where retaliation for the filing of the EEO complaint is alleged, and (3) where the plaintiff alleges further conduct carried out in precisely the same manner as that which is alleged in the EEOC charge. See id.; Chandler v. AMR American Eagle Airline, 251 F. Supp. 2d 1173, 1178 (E.D.N.Y. 2003).

With respect to the post-EEO complaint discrimination claims, only the first Butts category is offered as a basis for a finding that they are "reasonably related" to the claims in the EEO complaint. The Butts court referred to this category as "essentially an allowance of loose pleading." 990 F.2d at 1402. As is demonstrated above, in this case there are only two timely claims in the EEO complaint to which the subsequent allegations can reasonably relate: the allegation that Roebuck was discriminating against him when she told him that he could quit his job if he did not like the fact that the improper deduction was being taken out of his paycheck, and the allegation that Bolling violated his right to file an anonymous proceeding by telling Roebuck of his intention to file an EEO complaint. One would be hard pressed to conclude that the subsequent issues regarding failure to raise Miller's pay grade (whether the result of a promotion to work leader or to remain in step with his fellow employees), or being passed over for various promotions could reasonably expected to grow out of an investigation into either a failure of a superior to correct an administrative error regarding deductions from a paycheck or an investigation into a breach of confidentiality by Bolling. See Chandler, 251 F. Supp. 2d at

1178-79 (concluding that the plaintiff's allegation that he was denied an opportunity to move from part time to full time work was not reasonably related to his EEO complaint, which alleged only a denial of pay raises).

The only ground Miller raises in support of his contention that DOI's post-charge conduct is reasonably related to the EEOC claim's timely allegations is the fact that EEO Investigator Neal "noted on the record that he understood [Miller's] complaint encompassed additional claims," which included the claims at issue here. (Pl's. Br. at 13-15, 17.) These disparate claims did not become reasonably related to the two discrete claims in Miller's EEO complaint merely because investigator Neal was willing to discuss a variety of post-charge conduct when he took testimony from Miller (through DeJesus) over two and a half years after the EEO complaint was filed. In fact, quite apart from what investigator Neal believed to be the scope of Miller's claims, it became clear at oral argument that the EEOC sent Miller a letter stating what it understood Miller's claims to encompass–and only included those which were actually included in his EEO complaint. Miller never responded in writing in an attempt to formally amend his EEO complaint. Additionally, The final decision of the EEOC stated that Miller's claims consisted only of those that were put in writing in his EEO complaint. (9/12/07 Tr. at 19-27; Def's Ex. C at 6.)

In a final attempt to avoid the doctrine of exhaustion, Miller, almost in passing, suggests that DOI should be estopped from asserting failure to exhaust as a defense in this action. (Pl's. Br. at 15-16.) In support of this contention, Miller cites to EEO Bolling's allegedly improper actions taken in response to Miller's attempt to seek counseling on March 20, 2000–namely, that she did not accept his complaint and failed to provide him counseling regarding his grievances.

However, Miller fails to explain how these actions prevented him from amending his complaint or filing a subsequent complaint detailing all of his claims.

Moreover, "[t]he doctrine of equitable estoppel is not available against the government except in the most serious of circumstances." Rojas-Reyes v. Immigration and Naturalization Service, 235 F.3d 115, 126 (2d Cir. 2000). "Courts should invoke the doctrine against the Government 'only in those limited cases where the party can establish both that the Government made a misrepresentation upon which the party reasonably and detrimentally relied and that the Government engaged in affirmative misconduct.'" Pollock v. Chertoff, 361 F. Supp. 2d 126, 134 (W.D.N.Y. 2005) (quoting City of New York v. Shalala, 34 F.3d 1161, 1168 (2d Cir. 1994)). In this case, while Miller makes several allegations regarding Bolling's conduct when her counsel was sought, he makes no allegations that Bolling specifically prevented him from adding any claims to his EEOC charge or told him that he could not do so.[14] Therefore, DOI is not estopped from asserting failure to exhaust in this action. Accordingly, none of the conduct alleged by Miller that occurred after the filing of the EEO complaint on March 30, 2000 can provide the basis for any of Miller's age, disability, or race discrimination claims.

All of the Miller's post-EEOC charge claims for discrimination fail because they are unexhausted, with the exception of a potential retaliation claim since it does "reasonably relate" to the claims charged in the EEO complaint.[15] See Malarkey v. Texaco, Inc., 983 F.2d 1204,

---

[14]Moreover, it is undisputed that Miller has availed himself of the EEOC process in the past, (Pl's. Response to Def's. First Set of Interrogatories at 5), making it highly unlikely that he was unaware of his ability to include further claims in his EEO complaint.

[15]The ultimate success of the underlying discrimination claims in the EEOC is not a necessary predicate for a retaliation claim. Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).

1208 (2d Cir. 1993); Butts, 990 F.2d at 1402. The Court will now turn to the merits of Miller's remaining claims, the two timely and exhausted discrimination claims that were contained in the EEO complaint and the retaliation claim.

    2.    *Merits*

        *a.*    *The Two Remaining Discrimination Claims*

As is noted above, the two timely and exhausted discrimination claims are the claims that Roebuck was discriminating against him when she told him that he could quit his job if he did not like the fact that the deduction was being taken out of his paycheck, and the allegation that Bolling violated his right to file an anonymous proceeding by telling Roebuck of his intention to file an EEO complaint. The Court now turns to the merits of a discrimination claim (whether for age, race, or disability) based upon those allegations.

The elements of claims for discrimination under Title VII, the ADEA, and the Rehabilitation Act are quite similar. Under Title VII, a plaintiff must establish "1) that he belonged to a protected class; 2) that he was qualified for the position he held; 3) that he suffered an adverse employment action; and 4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004). Under the ADEA, a plaintiff must establish that "[1] at the relevant time the plaintiff was a member of the protected class; [2] the plaintiff was qualified for the job; [3] the plaintiff suffered an adverse employment action; and [4] the adverse employment action occurred under circumstances giving rise to an inference of discrimination, such as the fact that the

plaintiff was replaced by someone 'substantially younger.'" Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 187 (2d Cir. 2006). Finally, under the Rehabilitation Act, "a plaintiff must prove that: (1) he is an 'individual with a disability,' (2) he was 'otherwise qualified' for a position, (3) he was denied that position on the basis of his disability, and (4) the employer receives federal funds." D'Amico v. City of New York, 132 F.3d 145, 150 (2d Cir. 1998). Because the two exhausted discrimination claims do not involve an "adverse employment action," Miller's discrimination claims under all three statutes must fail.

It is well established that "[a] plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment. To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir 2000) (internal citations omitted). Such a change could consist of, *inter alia*, "a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indicies ... unique to a particular situation." Id.; see also Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 238 (2d Cir. 2007); Feingold, 366 F.3d at 152.

In the present case, the only timely and exhausted conduct before this court consists of a superior (Roebuck) initially failing to correct a clerical error regarding Miller's paychecks—an error that was subsequently corrected—and an EEO counselor's breach of confidentiality regarding Miller's intent to file an EEO complaint. These are

simply not the types of "materially adverse employment actions" contemplated by the case law.[16] In fact, neither of these instances resulted in any employment action whatsoever, let alone that which could be considered adverse.[17] Accordingly, Miller's timely and properly exhausted discrimination claims must be dismissed for his failure to establish his prima facie case.

      b.    *Miller's Retaliation Claim*

Finally, the Court turns to Miller's retaliation claim. As a preliminary matter, it should be noted that Miller's complaint does not state a retaliation claim based on the ADEA or the Rehabilitation Act. Rather, the SAC appears to state a claim for retaliatory conduct in response to his prior efforts to enforce his rights pursuant to Title VII. At oral argument, however, Miller's counsel stated that no Title VII race discrimination or retaliation claim was being asserted. (9/12/07 Tr. at 15.) Thus, Miller has waived his right to pursue this retaliation claim. See Jarvis v. Ford Motor Co., 283 F.3d 33, 64 (2d Cir. 2002). Even had he not specifically abandoned the claim, it would have been dismissed.

---

[16]The Court recognizes that "adverse employment action" is not technically a part of most articulations of the prima facie case under the Rehabilitation Act. In fact, those courts seem to require more—the denial of a position or at least (according to the statutory language) an opportunity. In any event, at least one district court, in a case not involving the denial of an opportunity, applied the "adverse employment action" standard to a Rehabilitation Act case. See Cheshire v. Paulson, No. 04-CV-3884, 2007 WL 1703180 at, *4-5 (E.D.N.Y. June 12, 2007).

[17]Miller conceded as much at oral argument, by admitting that the alleged violation of Miller's right to an anonymous filing does not constitute an adverse employment action and that Miller does not have a viable claim unless that which occurred after the EEO complaint was filed "reasonably relates" back to the EEO complaint. (9/12/07 Tr. at 8-13.) As is discussed above, those claims do not relate back to the timely filed EEOC claims with the exception of his Title VII retaliation claims.

15

"In order to present a prima facie case of retaliation under Title VII ... a plaintiff must adduce 'evidence sufficient to permit a rationale trier of fact to find [1] that []he engaged in protected participation or opposition under Title VII ... [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.'" Kessler v. Westchester County Department of Social Services, 461 F.3d 199, 205-06 (2d Cir. 2006) (quoting Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir. 2001)). In analyzing a retaliation claim, the three-step burden shifting approach adopted by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) is employed. See Cifra, 252 F.3d at 216 ("If the plaintiff meets [his prima facie] burden and the defendant then points to evidence of a legitimate, nonretaliatory reason for the challenged employment decision, the plaintiff must point to evidence that would be sufficient to permit a rationale factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation."). In this case, Miller has not demonstrated a triable issue of fact with respect to the fourth element of his prima facie case.

In the absence of any further evidence of retaliatory intent, courts have held that proximity in time between the complaint and the allegedly retaliatory action is sufficient to meet a plaintiff's prima facie case. See Id. at 217 (holding that 20 days was proximate enough to be sufficient to meet plaintiff's prima facie burden regarding retaliatory intent); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998) (less than 2 months); Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996) (12 days). In

the section of his brief addressing his prima facie case, Miller has not offered a single fact from which one might conclude that any of the complained of acts were retaliatory in nature (instead he simply argues that the retaliatory acts occurred). (Pl's. Br. at 18-22.)[18] Moreover, the first alleged retaliatory act that Miller complains of (his failure to be promoted to pay grade five upon being promoted to work supervisor) took place in April of 2001, over a year after his EEO complaint was filed. This time span is outside of the time frame established by prior Second Circuit case law from which retaliatory intent can automatically be inferred. Due to his failure to offer any evidence of retaliatory intent, Miller has failed to raise a triable issue of fact and his retaliation claims under Title VII must fail.

V. **Conclusion**

For the reasons set forth above, DOI's motion for summary judgment is granted. The clerk of the court is directed to enter judgment and close this case.

SO ORDERED

Dated: Brooklyn, New York
March 31, 2008

Carol Bagley Amon
United States District Judge

---

[18]It is worth noting that Miller's brief is consistent with the notion that he abandoned any Title VII retaliation claims, as it seems to be discussing only his prima facie case for discrimination under the ADEA and Rehabilitation Act, but not under Title VII for retaliation.